Good afternoon, Your Honors. In denying Mr. Varghese's claim, the California Court of Appeals nevertheless agreed that generally effective assistance of counsel includes the assistance of experts in preparing a defense and communicating with those experts in confidence. That, as a matter of fact, is a direct quote from the California Court of Appeals' previous case in Prince. It's also consistent with this Court's construction of constitutional law in Smith v. McCormick. The California Court of Appeals nevertheless, in Mr. Varghese's case, distinguished its previous holding in Prince based on what it perceived to be the state's compelling interest in Mr. Varghese's case. And it was very clear as to what it perceived to be the state's compelling interest. You know, we are acting under APA, right? That's correct. So the benchmark, as you know, as we all know, is a Supreme Court case directly on point. So what is your Supreme Court case directly on point that you rely on, or the one that's closest? Well, to support that, I would rely on this Court's construction of Supreme Court case law, which would be Ake. Ultimately, it goes back to Ake, right? Yes. Ake, and then... Which is a psychiatrist's case. That's correct. And you think that Ake, whatever Ake says, can be generalized to all experts, or is Ake limited to psychiatrists? Because, you know, psychiatrists are a particular kind of expert. The defendant talks to the psychiatrist, I mean, says things that might disclose self-incriminating or lawyer communications and the like. You don't think Ake is limited to psychiatrists? Well, I can't see... I see the Court's distinction, but I can't see a basis why the principles should be distinguished. Because what is being talked about in Strickland and a number of other cases, Ferry v. Ackerman, is the need to have, in an adversary system, defense counsel that operates independently of the government and can make independent judgments without worrying. But the district court didn't deny your client the right to have the expert examine the DNA, did he? No, that's correct. He simply said, if you're going to do that, since there's this limited amount of blood left, you're going to have to share the paper results. Not everything about it, but just the paper results, so that if the prosecution, in effect, gets attacked for its results, it has something upon which to debase it. That's correct. There's another issue here, and as the Chief mentioned, since we're dealing with AEDPA here, there really isn't any case right on point, is there? Well, I think that Smith v. McCormick's construction of Ake and Nobles is pretty clear Supreme Court case law. And I think also... I agree with you that you don't... I don't think you need a case exactly on point, and the Supreme Court has suggested that, that there is some flexibility in AEDPA. But even if there was some flexibility, those cases really deal with the testimony. And we have this odd circumstance referenced here that there's this limited amount of DNA left, and once tested, poof, it's gone. So you're dealing here not so much with, like, the psychiatrist case and testimony and whether you can use it, but you're dealing with vanishing evidence. And so is there any Supreme Court case we should look to that would give us a better clue about what to do about that? Well, I don't think there's a Supreme Court case that's directly on point. How about sideways on point that has to do with physical evidence as opposed to testimonial evidence? You know, I can't think of one offhand. Let me put to you a slightly different case than the one you have now. Let's say there was just enough DSA for a single test. What then? Well, and there is, of course, California case law, which deals with that situation. I believe it's the Cooper case. And I think, as with most constitutional rights, if there is a countervailing state interest, that's balanced against the defendant's interest. And if there's only enough for one test, then I think that there is a countervailing interest. Well, but here there is a countervailing interest, the prosecution. I mean, you may not think it's an important countervailing interest or one that should count for as much as the defendant's interest, but there is an interest. And that is to say, look, we frequently have our experts attacked in their results, so what we like to do is have a second and third and fourth sometimes test so that if, for some reason, the expert is challenged on the one test, we have a backup. So, you know, that is an interest, isn't it? Well, that gets to the core of my argument, which is, in this case, I do not believe there was a state countervailing interest, and for two reasons. One, the state's own expert, their DNA expert, said, I see, quote, no legitimate scientific purpose to do corroborative testing. In the face of that, the prosecutor says, well, but I want to do it. Well, okay, you know, so you want to do it. I see that could be some interest. Maybe because the lawyer had more experience in court and has seen confident experts fall apart on cross-examination. Well, but the second reason why whatever weight that has, that the prosecutor still wants to do it even though his expert says it's unnecessary, evaporates when you consider the defense stipulation, which is in the excerpt of record 54 to 56, particularly page 55, where the defense lawyer says, look, I'm either going to turn this stuff over to the state because it's going to be beneficial, or I'm not going to use it and I'm not going to challenge the state's expert in any respect. Well, that was the point I thought that made this a little bit different. As the defense counsel said, I basically would let the government test stand. I wouldn't challenge it, he said, right? That's what he said. But then the prosecution comes back, so maybe you can just answer this. They say, well, but that doesn't mean that there might not be some other circumstances once we get to trial in which we need to put on evidence and that this stipulation doesn't protect us, they say. So maybe you could address why you think that stipulation actually would protect the prosecution or the state's interest. I'm not so sure that the prosecutor ever got around to saying, well, things could change. Now, that's what the state has sort of said in its answer brief. But I don't think the prosecutor said that. And I think that it's important to recognize, and I don't believe that I pointed this out as clearly in my briefs as I could have, but at page 55 of the excerpt, the defense lawyer is saying, look, I'm not going to challenge it in any respect. Sometimes lawyers will make these stipulations and then they'll try and poke holes in cross-examination or in closing. They'll make some sort of argument challenging it. I'm not going to do that. And he talks about California case law to that effect, which is a California Supreme Court case called Bolden, which indicates that if the defense lawyer does try and play fast and loose with that, make a stipulation and then get around it, that at that point the court would say, well, look, now you have to turn this stuff over. I didn't make you turn it over before, but you've played dirty in saying you're stipulating to something and now you're effectively not. You're bringing up the closing. Now you have to turn that over. And the court has mentioned, of course, that the DNA, the blood actually vanishes, but the results and the other discoverable material, the material that the expert produces in creating these results doesn't disappear. It's all still there. So if the defense lawyer violates a stipulation, then the stuff has to be turned over. It's that simple. It seems to be a pretty clear, you know, when you weigh the facts here, there's no need to corroborate given that stipulation and given that the defense, that the government already has robust results that its expert doesn't think needs to be corroborated. And on the other side, you have a constitutional right that the California Court of Appeals acknowledges, the California Superior Court acknowledges. It's not as if this is some sort of out there sort of idea that defense lawyers operate with a degree of confidentiality unless there's a countervailing state interest. I think it's almost so obvious as to be unnecessary to have been stated, you know, clearly in one Supreme Court case. I think Strickland makes it clear. You can't have the state interfering with defense counsel's confidential investigation or representation of his clients. So getting back to where we started from, since this is an epic case, Ake's your best case. You want us to analogize from Ake. Is that right? I think Ake and Nobles, you know, Nobles says, look, acknowledges that the defense lawyer has the right to conduct an investigation, including using experts, in confidence. And that case involves a defense investigator. Now, that right ends when the defense lawyer puts the investigator on the stand, puts the evidence in. At that point, you waive the right. But up until that point, the right exists. And, again, going back to Chief Judge Kuczynski's question, you know, I agree that, as with most constitutional rights, if the state has a strong countervailing interest, this would be a different analysis. But when you really get down to it in this case, the state didn't have a strong countervailing interest. They had a robust result. Their experts said, I don't need anything more. There's no legitimate scientific basis. And they had a stipulation from the defense lawyer saying, you're either going to get this stuff, which is what you're asking for, or your result's going to go unchallenged. And so they wouldn't even, you know, really have, I mean, arguably it would be cumulative to introduce a second result when the first result is unchallenged. I realize that there's some circumstances with maybe eyewitness testimony where, you know, there's some dispute as to whether or not a person, the eyewitness has an accurate recollection and got a good view of the person that such sort of cumulative testimony might be permissible. But in this context where you have a scientific test that's unchallenged, it doesn't seem to me the state would even have a right under the evidentiary rules to introduce two results. Thank you. We'll hear from the state. May it please the Court, Len McGinnis, Deputy Attorney General for the State of California. I'll certainly address this so-called stipulation, but I want to start with the main issue, which is the AEDPA in this case. And there has to be either clearly established precedent on the issue, or as the Court said in Moses v. Payne, it has to be clear that the general rule is to be extended to the situation that we have before us. Mr. McGinnis, I agree with you. AEDPA is, of course, the big stumbling block for your opponent on this case. But let me ask you this. Although this was not raised by them, and I don't think you raised it either, we haven't talked about the Fifth Amendment. Is there an element of this case that brings that into play? Here the prosecution says, okay, you can take this DNA, and you can do your independent test and do what you want with it, but I want the results. On the other hand, if those results are basically they convict the defendant, has he not, in effect, been compelled to testify against himself? Your Honor. It may seem far-fetched, but work with me on that. Is that a concern? I would say no, because under clearly established precedent, which is Schmerber, non-testimonial evidence doesn't come under the Fifth Amendment. And I believe even Schmerber involved the seizing of a blood sample from a defendant. So it's the non-testimonial aspect that just takes the Fifth Amendment out of the play, right? That would be what I would say, and that comes from Noblis, and Noblis cites Schmerber. Now, Aki, in addition to being a psychiatric case, another reason that that doesn't clearly extend to the situation before us is Aki, as opposed to the Ninth Circuit case from this Court, which defense counsel cites, which we know is not clearly established precedent, Aki does not address whether the psychiatric results can be turned over to the other side. The only issue in Aki is whether the defense has the right to the psychiatrist in the first place. But you would acknowledge that if the psychiatrist report is used or the DNA test is used by the defense, then it would be turned under the rules, correct? Yes. Under Noblis, it would be turned over. Right. So the only question then is not in case they use it. The only question is if they don't use it. And so if they don't use it, why is there an invasion of the work product? Why is that justified? Well, I'll get to that in a minute, Your Honor. Why don't you get to it now? Okay. I'm sorry, Your Honor. Because in this case, what we're talking about as a stipulation, there was never a stipulation. If you read the record very carefully, there was just a general discussion and defense counsel saying, you know, if the test turns out in our favor, I guess we're stuck is basically what he's saying. I don't see anywhere in this record any offer by the defense counsel, I'll stipulate to the accuracy of the people's test results, or I will not cross-examine the defense expert. There's no mention of the Bolden case. The first mention of the Bolden case comes out in the briefs in this court. And what's interesting, and I'm — Well, to me, that's not really the issue. The issue is if the defense were to undertake the testing and decide not to use it, whether or not they were going to challenge the government is not the issue. It's whether they would have to turn over the results. So what — doesn't that, in effect, invade the work product and get you into nobles or nobles? No, Your Honor, because when there's a countervailing state interest, you have to balance the interests. And the court of appeal reasonably concluded that this was a proper balancing of interests. What they were looking at, and at the oral argument in the court of appeal, what was interesting is that the presiding justice asked Mr. Schraer, who represented Mr. Varghese at the time, could your — And the defense — the prosecution would have been stuck with the cross-examination because the only time under California law you have to turn over results is when you actually use the expert at trial. So Mr. Kornatje and his lab could have been subject to cross-examination without any turning over of the results to the people. I'm not understanding that argument. They already have a positive result, right, which they can put on. They can, but it can be — polls can be poked in it by the defense. Well, they can be poked in it. If they don't do any test, you can ask them the same question. Weren't you drunk when you did that exam? Didn't you actually substitute somebody else's DNA? That doesn't have anything to do with whether there's a second DNA test. Well, the people have the burden of proving their case beyond a reasonable doubt. And if the DNA expert is thoroughly cross-examined until he looks like a blithering idiot on the stand, then the prosecution's DNA evidence goes out the window. But you wouldn't be any worse off if they don't do any DNA testing. Why isn't all that still on the table? That's what I didn't really understand about the balancing of interests because that, to me, seemed a little bit trumped up. If you look at how a trial really goes forward, you're no worse off if they don't put anything on the stand. But we're better off and the case is stronger if there are DNA results. But you already have a positive DNA result that you can put in, that you're totally confident. I mean, you're prosecuting the guy. You're totally confident in that result, I presume. They're totally confident in that result, but there's something beyond that, too. And that is in investigating the crime, the district attorney pointed out that he wanted to make sure, because this was such an important piece of evidence, he wanted to make sure that the results were on the up-and-up. So he wanted to perform a corroborating test even before the case went to trial. And that's another state interest. When you have a lab result and it's important,  beyond a reasonable doubt, if there's a test that's this key, you want to perform corroborating results on that before you even bring the case to trial. And, indeed, there were a couple of other pieces. You may want to, but so what? I mean, the bottom line is that the state gets to pick its expert, and without, you know, it gets to pick its own expert. And the defense doesn't get a chance to do that unless it's willing to turn over the results. Well, actually, Your Honor, that's not true, because if you look at the record on this case, what the superior court said was you can have Dr. Blake as your expert. Not only did they get to pick their expert, they got to pick the expert of their choosing. We can send this test to a third-party lab, and the third-party lab can turn over the results to both parties. So not only did the defense get an expert, it got the expert of its choosing to its heart's content. The superior court and the court of appeal picked a reasonable solution to this problem. And since the clock is ticking down, I just need to return, and, you know, this generated a vigorous fight at the court of appeal level, too. We have no Supreme Court precedent on this issue. We have no reasonable ‑‑ the question is whether reasonable jurists could disagree that the court of appeal was unreasonable in reaching this conclusion, and we just can't get there on the facts of this case. As the court of appeal pointed out, there were several other solutions that may have been employed, and other courts might reach different results on these same facts, but this is the result that the court of appeal reached, and it was reasonable under existing precedent. And with that, unless the court has any other questions, we would submit on the briefing. Thank you. We'll take a minute for rebuttal. Regarding the offer to stipulate, I'd point to the bottom of page 54, the excerpt of record going into page 55. Defense counsel says, then the defense will either call Dr. Blake and will come out for whatever reason, or for whatever reason, the defense will not call an expert, and then the people's evidence goes essentially unchallenged. And frankly, the way courts have resolved the issue, if, let's say, Dr. Blake does a test and the defense chooses not to call Dr. Blake, et cetera, et cetera, and then he goes on, this is at the top of page 55, if we play fast and loose, if we try and challenge their expert through cross-examination, the Bolden case, he doesn't mention Bolden, but that's what he's talking about, will allow the judge to deal with that by saying, now you've got to turn the stuff over. You can't stipulate and then go back on your stipulation. The government is suggesting that the defense stipulated and went back on its stipulation when they later attacked the state expert, but that's not what happened. The court and the government of the state wouldn't accept the stipulation, and so the defense wasn't bound by it. They could attack the state expert. So the stipulation wasn't in effect. It was not accepted. That's why they could cross him in any manner they chose to at that point in time. Regarding the Supreme Court case on point, I poured the court to footnote 15 in Nobles 422 U.S. 225, that's 240, note 15, where they specifically talk about, we cannot accept the respondent's contention that the disclosure order here violated the defendant's Sixth Amendment right to effective representation of counsel. They're saying that because the defense put on this investigator and thereby waived that protection. That's pretty clear to what should be obvious, which is defense lawyers aren't obligated to turn over everything that they do, all the information when they consult with experts. They never are. They only are if they put the expert on the stand. And again, as I said before, I recognize that there could be some play in that rule if there is a countervailing state interest. There wasn't in this case. Thank you.
judges: Kozinski, McKeown, Smith